# In the United States Court of Federal Claims

No. 16-1556
Filed: September 26, 2017

| | |
|---|---|
| AVANT ASSESSMENT, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Jurisdiction;
Election Doctrine;
Transfer to Agency Board

*Dirk D. Haire*, Washington, DC, for plaintiff.

*Andrew W. Lamb*, U.S. Department of Justice – Civil Division, Washington, DC, for defendant.

## **OPINION**

This case is before the Court on defendant's motion to dismiss plaintiff's complaint, which was filed on November 21, 2016, pursuant to rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Defendant filed its motion filed on February 21, 2017. Plaintiff filed its response on March 24, 2017, and defendant its reply on April 17, 2017.

Plaintiff seeks costs related to the termination for convenience of a contract, which plaintiff alleges it over-performed on due to the Government's arbitrary and unreasonable application of the ambiguous acceptance criteria for items. In its motion to dismiss, defendant contends that the Election Doctrine precludes the Court's subject matter jurisdiction over Count I because it is substantially similar to a claim previously filed at the Armed Services Board of Contract Appeals ("ASBCA"). Defendant further argues that plaintiff fails to state a claim for which relief may be granted. Alternatively, defendant argues that the case should be transferred to the ASBCA for further proceedings.

The Court held oral argument on these matters on June 9, 2017. The matter is now ripe for disposition.

## I.   BACKGROUND

### a.  Factual Background

Plaintiff entered into two separate contracts with the Department of the Army ("the Army" or "the Government"). On September 29, 2010, plaintiff and the Army executed Contract W9124N-10-C-0109 ("Contract 0109") for the development and delivery of 3,300 foreign language test items. Almost a year later, on September 16, 2011, plaintiff and the Army executed Contract W9124N-11-C-0033 ("Contract 0033") for the development and delivery of 1,300 foreign language test items. Pl.'s Resp. at 3. Both contracts' test items were for use at the Defense Language Institute Foreign Language Center ("DLI") to assess students' fluency in foreign languages and their

progress in learning those languages. Def.'s Mot. at 4. Only Contract 0033 is at issue in the instant case.

Contract 0033 had an original total award amount of $1,400,844.32, consisting of $1,358,344.32 for the test items and $42,500.00 for travel and delivery. Regarding review and rejection, Contract 0033 contained the following provision:

> The Government will review all passages and items submitted by the contractor. Those that do not meet standards will be rejected. It is expected that a certain proportion of passages and/or items submitted by the Contractor will be rejected during the review process. Historically, rejection rates have varied considerably from contract to contract and throughout the period of performance.

Contract 0033, Section C.5.2.2.1. Contract 0033 also noted that the delivery schedule was based on a historical rejection rate of 45%, but that the Government retained the ability to change that schedule due to higher or lower rejection rates. Section C.6.10.1. The contract further noted that "DLIFLC will work closely with the Contractor to improve the quality of items (including extensive discussion sessions focusing on specific items), but it is likely that successful completion of the contract will entail the initial development of more items than listed in the above charts, to account for loss during review." Contract 0033, Section C.5.2.2.2.

On September 28, 2012, the parties executed Modification No. PO0003 to Contract 0033; the modification provided that "any items that are still required by the contract but not accepted by the Government shall automatically be descoped from the contract." Pl.'s Resp. at 3.

On June 26, 2013, the Army terminated Contract 0109 and Contract 0033 for cause. Compl. ¶ 45. The stated reason for termination was plaintiff's alleged failure to provide the requisite number of test items required by each contract. Plaintiff alleges that it delivered 2,802 test items under contract 0033, but that the majority of the items were rejected, preventing plaintiff from fulfilling the delivery amount required by the contracts. Compl. ¶ 10.

### b.  Procedural Background

On September 9, 2013, plaintiff filed two separate appeals before the ASBCA. The first appeal, docketed as ASBCA No. 58867, appealed the contracting officer's decision to terminate Contract 0109 for cause. The second appeal, docketed as ASBCA No. 58866, appealed the contracting officer's decision to terminate Contract 0033 for cause. Both appeals sought to have the termination for cause converted into a termination for convenience. Neither appeal sought money damages.

Over a year later, on December 2, 2014, plaintiff filed its appeal of the contracting officer's deemed denial of plaintiff's claim for breach of Contract 0109, docketed as ASBCA No. 59713. In this appeal, plaintiff sought damages related to an alleged breach of contract when the Army terminated Contract 0109 for cause. Plaintiff followed up by filing another appeal on August 27, 2015, this time appealing the contracting officer's deemed denial of plaintiff's claim of breach of Contract 0033, docketed as ASBCA No. 60143. As before, plaintiff sought damages related to an alleged breach that occurred when the Army terminated Contract 0033 for cause.

On September 28, 2015, the ASBCA granted summary judgment in Avant's favor in ASBCA No. 58866. The ASBCA held that because Modification PO0003 resulted in the Government's agreement to accept less than 1,300 test items, the Government was precluded from terminating Contract 0033 for cause for any alleged failure to provide 1,300 acceptable test items. Accordingly, the ASBCA held that the termination must be converted from termination for cause to a termination for convenience.

On September 22, 2016, the ASBCA dismissed Appeal No. 59713, concerning plaintiff's claim for breach of contract damages for Contract 0109, as moot by granting plaintiff's motion to dismiss. Plaintiff had moved to dismiss its breach of contract claim after the ASBCA converted the termination for cause in Contract 0109 into a termination for convenience because, in its belief, it could no longer seek breach of contract damages once the termination had been determined to be one for convenience. Of particular importance is that plaintiff's appeal ASBCA No. 60143 remains pending before the board awaiting final decision.

Following the ASBCA's decision to convert the termination for cause into a termination for convenience in Contract 0033, on August 9, 2016, plaintiff submitted to the contracting officer a termination for convenience settlement proposal, which sought $1,517,404.98 for test items not accepted by the Army and $3,133.00 for settlement expenses, and requested a final decision from the contracting officer by September 8, 2016. Plaintiff alleges that the agency never participated in negotiations or discussions with Avant concerning its termination settlement proposal or expressed any definitive intention to do so. Plaintiff also alleges that the contracting officer failed to render a final

decision on the settlement proposals by the required deadline. Accordingly, on November 17, 2016, plaintiff contacted the Government, stating that it viewed the lack of discussions and lack of final decision on the settlement proposal as constituting an impasse, and therefore a deemed denial by the contracting officer. Plaintiff then filed the instant cases before the Court of Federal Claims on November 21, 2016.

On January 20, 2017, plaintiff avers that it did receive a response from the contracting officer regarding the settlement proposals. Pl.'s Resp. at 12. At that time, the Government disputed the existence of an impasse and stated that plaintiff could expect an update no later than February 3, 2017. *Id.* On February 2, 2017, plaintiff was notified that no update from the Government would be forthcoming due to the ongoing litigation. *Id.*

### c.  Procedural History Before the Court of Federal Claims

On November 21, 2016, plaintiff filed two cases before the Court – the instant case, and a companion case, No. 16-1557, which concerned Contract 0109. Because the two cases presented, at that time, materially identical legal issues, the Court and parties agreed that in the interest of judicial efficiency, the two cases should be consolidated. On June 14, 2017, plaintiff voluntarily dismissed its complaint in Case No. 16-1557, because it acknowledged that the termination settlement proposal as provided in that case lacked proper certification as defined by 41 U.S.C.S. § 7103. Plaintiff then transmitted a new, properly certified settlement proposal to the contracting officer and promptly refiled the matter before the Court (Case No. 17-823).

Because the new complaint did not raise any new claims, after discussion with the parties, the Court once again consolidated the two cases. On August 18, 2017, defendant

filed a motion to dismiss plaintiff's complaint filed in Case No. 17-823 which contained

new legal arguments about the Court's jurisdiction. After full briefing of the matter, the

Court determined that judicial efficiency was no longer served by the cases being

consolidated. To that end, on September 21, 2017, the Court unconsolidated the cases.

The other case, No. 17-823, remains before the Court at this time.

## II.    DISCUSSION

Defendant advances two arguments as to why it believes plaintiff's complaint

must be dismissed. First, defendant contends that the Election Doctrine precludes the

Court's subject-matter jurisdiction because plaintiff's previously filed ASBCA claims for

breach of contract are the same for jurisdictional purposes. Second, defendant argues that

the complaint fails to state a claim upon which relief may be granted because plaintiff has

been paid the full contract price for work performed under the two contracts, and that the

award of any additional damages relating to unaccepted items would constitute a

windfall.  Alternatively, defendant argues that the case should be transferred to the

ASBCA because the six factors announced in *Morse Diesel Int'l, Inc. v. United States*, 66

Fed. Cl. 801, 804 (Fed. Cl. 2005) weigh in favor of transfer.

Plaintiff argues that the Election Doctrine is inapplicable to the instant case

because a claim for breach of contract is materially different from the claim it currently

advances in this Court for costs related to a termination for convenience. More

specifically, plaintiff argues that it was originally precluded from asserting its claims

relating to the termination for convenience because at the time it filed its appeal for

breach of contract, it was operating under the assumption that the Government viewed the

contracts as having been terminated for cause. Only when the termination for cause had been converted to termination for convenience, and plaintiff submitted its termination settlement proposal, and impasse had been reached, could plaintiff then assert a claim for damages relating to the termination for convenience.

Plaintiff further argues that its cause of action will not result in a windfall because FAR 52.212-4(l), which governs the termination of contracts for the Government's convenience, allows for a contractor to be paid "a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges" resulting from the termination. Plaintiff believes that the Army improperly rejected an unnecessarily large amount of the test items prepared under the contracts, resulting in an over-performance of approximately 115% of Contract 0033. Finally, plaintiff opposes transfer of the matter to the ASBCA because it contends that its current claims for termination for convenience costs were never before the ASBCA, and that its choice of forum at the Court of Federal Claims is proper.

### a. Legal Standard

Defendant moves to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction or RCFC 12(b)(6) for failure to state a claim upon which relief may be granted. Before reaching the merits of a case, "a court must satisfy itself that it has jurisdiction to hear and decide" the case. *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004). On a party's motion to dismiss for lack of subject matter jurisdiction, a court generally accepts "the facts alleged in the complaint to be true and correct." *Reynolds v. United States*, 846 F.2d 746, 747 (Fed. Cir. 1988). When the Court's subject

matter jurisdiction is challenged pursuant to RCFC 12(b)(1), the plaintiff bears the

burden of establishing subject matter jurisdiction by a preponderance of the evidence.

*Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

    In order to survive a motion to dismiss for failure to state a claim, "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.

2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.

1955, 167 L. Ed. 2d 929 (2007)). Dismissal under RCFC 12(b)(6) is proper "when the

facts asserted by claimant do not entitle him to a legal remedy." *Lindsay v. United States*,

295 F.3d 1252, 1257 (Fed. Cir. 2002). In considering such a motion, the Court accepts

"all well-pleaded factual allegations as true and draws all reasonable inferences in the

claimant's favor." *Id.* at 1257.

### b.  The Election Doctrine Does Not Divest This Court of Jurisdiction

    The first issue for the Court to resolve is whether the Court has jurisdiction to hear

plaintiff's claims, or if, as the defendant argues, plaintiff is barred by the election doctrine

from presenting its claim for termination for convenience damages here because it elected

to file its breach of contract claims before the ASBCA.

    The Contract Disputes Act ("CDA") provides alternative forums for appealing a

claim submitted to a contracting officer. 41 U.S.C. § 609(a)(1). "It is well established

that, pursuant to the contract Disputes Act, a contractor wishing to contest an adverse

final decision by the contracting officer either may appeal the contracting officer's

adverse decision to the appropriate board of contract appeals or may contest the

contracting officer's decision directly to the Claims Court." *Nat'l Neighbors Inc. v. United States*, 839 F.2d 1539, 1541 (Fed. Cir. 1988). This has led to the creation of a rule known as the "Election Doctrine" which states that "[o]nce a contractor makes a binding election under the Election Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternative forum." *Id*. at 1542. "Thus, if a contractor makes an informed, knowing, and voluntary decision to pursue its appeal in another forum with jurisdiction over the appeal, the Court of Federal Claims is required to dismiss a subsequently filed appeal concerning the same claim for lack of jurisdiction." *Bowers Inv. Co. v. United States*, 104 Fed. Cl. 246, 254 (Fed. Cl. 2011).

Defendant argues that the Election Doctrine bars plaintiff's claim because the breach of contract claim that Avant filed at the ASBCA is essentially the same as the claim for termination for convenience costs that plaintiff seeks here because it relies on the same set of operative facts and seeks essentially the same measure of relief (the costs associated with producing rejected test items). Def.'s Mot. at 16.  Plaintiff, on the other hand, argues that its claim for termination for convenience costs is a separate and distinct claim from the breach of contract because other courts have found that the two claims are separate causes of action, the termination for convenience claim accrued well after the breach of contract claim, and it seeks drastically different amounts as compensation before this Court than it did for breach of contract before the ASBCA. Pl.'s Resp. at 13-20.

Defendant's argument that the two claims are similar enough to invoke the Election Doctrine has some moment. When determining whether there is a single claim or a separate claim, the Federal Circuit has held that "the court must assess the operative facts." *Kinetic Builder's Inc. v. Peters*, 226 F.3d 1307, 1312 (Fed. Cir. 2000). *See also Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (claims are the same if they are "based on a common or related set of operative facts."). Defendant also contends that "differences in amounts sought as relief do not of themselves entail distinct claims, unless the differences reflect distinct factual bases or 'different types of remedy, such as expectation damages versus consequential damages,' where one distinct remedy would require 'additional compensation beyond' what the other would allow." Def.'s Mot. at 17 (citing *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015)).

There can be no doubt that the set of operative facts before the Court presently and the set of operative facts which formed the basis of plaintiff's breach claim before the ASBCA are largely similar. Both causes of action concern the same two contracts and the same general nexus of events: that plaintiff produced items under the contract which were rejected by the Army, that plaintiff believed that at least some of these items were rejected due to an arbitrary application of the testing standard, that the contracts were amended to change the total number of items due, and that the contracts were eventually unilaterally terminated by the government.

There are also factual differences, however, which the Court believes are important. First, the timing of the termination for convenience claim in the instant case is drastically different from the breach of contract claim. At the time the Army initially

terminated the contracts, it did so under a theory of termination for cause. At this time, plaintiff pursued the only course of action available to it: it sought to have the termination for cause changed into a termination for convenience, and brought a claim before the ASBCA for breach of contract, appealing the contracting officer's deemed denial of its submitted claim for breach of contract. Plaintiff could not have brought a claim for termination for convenience damages because at that time there was no termination for convenience. It was not until over three years later for Contract 0033 (Avant filed its ASBCA appeal of the termination for cause on September 9, 2013 and the board converted the termination on September 28, 2016), that the board converted the termination for cause into a termination for convenience. At that point, more actions needed to occur before plaintiff's claim accrued, namely plaintiff needed to submit a settlement proposal for termination for convenience costs, and the negotiations needed to reach an impasse. Thus, although plaintiff's original claim for breach of contract has a large factual overlap relating to the creation and the termination of the contract, the validity of plaintiff's termination for convenience claim requires a significant number of facts that were not in existence at the time the breach claim was filed. Accordingly, the Court believes there is enough of a factual distinction to maintain the two claims as separate.

Other cases support the determination that a breach of contract claim should be treated as a separate claim from a claim for termination for convenience costs. In *E&E Enters. Global v. United States*, the plaintiff contractor submitted to the contracting officer two separate and distinct claims: the first for termination for convenience costs,

and the second for wrongful, bad faith termination of the contract (i.e., breach). 120 Fed.

Cl. 165, 170. The Court noted that "the certified claim contains two separate claims,

supported by fundamentally different legal theories and requesting different amounts of

money." *Id.* at 177. The Court once again found a claim for breach of contract to be

separate from a claim for termination for convenience damages in *J. Cooper &*

*Associates, Inc. v. United States*, 47. Fed. Cl. 280 (2000). In that case, plaintiff contractor

argued that the court possessed jurisdiction to decide its claim for breach damages even

though it had failed to submit that claim to a contracting officer because the contractor

had previously submitted a claim for termination for convenience damages, which should

suffice to cover both claims because they involved the same set of operative facts and the

same legal theory of recovery. *Id.* at 286. The Court disagreed with plaintiff's argument,

noting that the "two legal theories presented in the record in this case cannot be viewed as

part and parcel of the same claim." *Id.* at 287.

The Federal Circuit has considered the issue of whether two separate contractor

decisions on the same contract can lead to two cases which may exist simultaneously

before a board and the Court of Federal Claims. In *Glenn v. United States*, the contracting

officer issued an initial decision finding the plaintiff contractor to be liable to the

government for the cost of completing the contract. 858 F.2d 1577, 1580 (Fed. Cir.

1988). The contracting officer went on to say that the issue of quantum would be

determined in a subsequent decision. *Id.* The contractor appealed the initial liability

decision to the board, and when the second quantum decision was issued, the contractor

appealed that to the Court of Federal Claims. In deciding whether the election doctrine

barred plaintiff's case before the Court of Federal Claims, the Federal Circuit articulated

the following rule:

> If the quantum decision did not raise any new claims distinguishable from
> the claim decided by the liability decision and therefore did not raise any
> separately appealable claims . . . there is but one claim and one decision. . .
> . If the quantum decision was entirely distinct, or raised some
> independently appealable claims, those claims would normally be heard by
> the Claims Court, or be transferred to the board, at the Claims Court's
> election, pursuant to [41 U.S.C. § 609(d)].

*Id.* Applied to this case, if the contracting officer's denial of plaintiff's claim for

termination for convenience damages did not raise any new, appealable claims to set it

apart from the previous denied claim for breach of contract damages, there would be only

one claim. That is not the case presently. There can be no doubt that the contracting

officer's denial of termination for convenience costs arose from a separate submitted

claim, and thus would be separately appealable. The two claims concern compensation as

a result of different actions of the government. They cannot be viewed as the claims at

issue in *Glenn* were, where the court found that the quantum decision merely added to the

original liability decision.

　　The Court also believes that the different in quantum between the plaintiff's

termination for convenience claim and breach of contract claim helps set the former apart

from the latter for election doctrine purposes. Before this Court, plaintiff seeks

$1,513,726.71 plus interest and legal fees for Contract 0033. By contrast, plaintiff

claimed breach damages of $493,730.73 for Contract 0033 before the ASBCA. Whether

plaintiff will be able to recover the full amount sought is a matter for another day, but

there can be no question that there is a wide difference in the quantum sought by plaintiff

for breach damages and the amount plaintiff now claims for termination for convenience costs.

Overall, the Court believes that there is enough of a difference to separate the instant claim for termination for convenience costs from plaintiff's previous claim for breach of contract. Although there is an undoubted overlapping of facts (as is to be expected with two claims arising under the same contract), there are enough significant differences as to render the two claims separate. Furthermore, the claims request a different quantum under a different theory of recovery.

### c.  Plaintiff has stated a claim upon which relief can be granted.

Having decided that the Election Doctrine does not deprive the Court of jurisdiction in this case, the Court now turns to defendant's remaining jurisdictional arguments. Specifically, defendant argues plaintiff has been paid in full under the contract for the work performed, and that any additional payment sought by plaintiff would result in an impermissible windfall. Def.'s Mot. at 22-24. Defendant believes that due to the modification of the contracts executed by both parties which reduced the total number of items to be delivered, plaintiff has been paid in full for all work to be performed under the contract and cannot be allowed any further amount. *Id.* at 23. Defendant furthermore argues that plaintiff is not entitled to be paid for items produced but not accepted by the Army because the contracts contemplated a historical rejection rate of between 30-60%, which would account for plaintiff's alleged overproduction. *Id.* at 24.

Plaintiff, on the other hand, argues that because FAR 52.212-4(l) is the controlling provision for the contract, it is entitled to compensation for the percentage of work performed prior to termination, which plaintiff alleges is approximately 215% of Contract 0033. Pl.'s Resp. at 25. FAR 52.212-4(l) provides, in pertinent part, that:

> Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the Satisfaction of the Government using its standard record keeping system, have resulted from the termination.

Thus, plaintiff avers that any potential recovery is not capped at the maximum contract price and that it is entitled to recover for the excess items it produced that were not accepted by defendant. Pl.'s Resp. at 25.

In order to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Dismissal under RCFC 12(b)(6) is proper "when the facts asserted by claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In considering such a motion, the Court accepts "all well-pleaded factual allegations as true and draws all reasonable inferences in the claimant's favor." *Id.* at 1257.

In the instant case, the Court finds that plaintiff's complaint succeeds in presenting facts which, if true, would give rise to a legal remedy before this Court. Plaintiff has alleged that it produced an amount of items under the contract well in excess of the stated

amount, even after modification. While it is true and uncontested that the contract contemplated for some percentage of items produced to be rejected, that percentage is quite variable, with the contract calling for a delivery schedule based on a historical 45% rejection rate, while acknowledging that the actual rejection rate will vary from contract to contract.[1] While it is possible, as defendant argues, that plaintiff's excess production is within the prescribed rejection rate, Def.'s Mot. at 24, plaintiff goes one step further and alleges that the reason so many items were rejected was due to the arbitrary and capricious manner in which the Army applied its testing standards for the items. Accepting plaintiff's allegations as true, as the Court must at this stage in litigation, there is no doubt that plaintiff could be entitled to compensation for items produced under the contracts which were improperly rejected, based upon an arbitrary or capricious application of the testing standards. The Court cannot say that in that instance, recovery for the costs associated with that item would result in a windfall, even if plaintiff has been compensated for meeting 100% of the contract delivery amount, as contemplated by the mutual amendment to the contract. The Court knows of no case which would limit a plaintiff seeking to recover termination for convenience costs under FAR 52.212-4(l) to the maximum value prescribed by the contract, and defendant has not cited to any case for that proposition.

---

[1] Contract 0109, at issue in Case No. 17-823, notes that the rejection rate is historically between 30% and 60%.

Accordingly, the Court finds that plaintiff has stated a plausible claim for termination for convenience damages with the facts alleged by the complaint and the evidence provided in the briefings. Defendant's motion to dismiss, inasmuch as it argues that plaintiff has failed to state a claim upon which relief can be granted, must be denied.

**d.  The balance of factors weighs in favor of the Court transferring the instant matter to the ASBCA.**

The final issue for the Court to consider is whether transfer of the instant matter to the ASBCA is appropriate. Defendant has argued that transfer is appropriate under the six factors announced by this Court in *Morse Diesel Int'l, Inc. v. United States*, 66 Fed. Cl. 801 (Fed. Cl. 2005), while plaintiff argues that these same factors weigh in favor of the instant matter remaining before the Court.

The Contract Disputes Act, 41 U.S.C. § 609(d) provides the following:

> If two or more suits arising from one contract are filed in the United States Claims Court and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Claims Court may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

The Court of Appeals for the Federal Circuit has expanded on this provision, noting that the Court of Federal Claims has "broad discretion" in deciding whether to retain jurisdiction of a case or transfer it to an agency board. *See Joseph Morton Co. v. United States*, 757 F.2d 1273, 1280 (Fed. Cir. 1985). When weighing the decision on whether to transfer a case, among the factors for the Court to consider are:

> (1) Whether the dispute before the board and the court concern the same contract; (2) whether the claims before the court and the board duplicate claims or have overlapping and related issues; (3) whether plaintiff initially

> chose to appeal its claims before a court or a board; (4) whether one forum
> or the other has already made significant progress on the claims; (5)
> whether concurrent resolution would result in an inefficient allocation of
> the court's, board's, or party's resources; (6) whether separate forums
> would reach inconsistent results.

*Morse Diesel*, 66 Fed. Cl. at 804 (citing *Giuliani Contracting Co. v. United States*, 21 Cl.

Ct. 81, 83 (1990)). The Court shall examine these factors in order.

The first factor to consider is whether the dispute before the ASBCA and the Court

concern the same contract. In this case, plaintiff's claim before this court concerns the

same contract, Contract 0033, which is at issue in the breach of contract case brought

before the ASBCA. Plaintiff unsurprisingly does not dispute or argue against this point in

its response brief. Accordingly, the Court finds that this factor weighs in favor of transfer.

The second factor to be considered is whether the claims before the Court and the

ASBCA either duplicate each other or have overlapping and related issues. Having

previously found that the claim for breach of contract and the claim for termination for

convenience costs to be separate claims, it cannot be said that they are duplicative for

purposes of this factor. The Court finds, however, that both claims have some

overlapping and related issues. This issue will be discussed in greater detail *infra* when

the Court discusses the fourth *Morse Diesel* factor.

The third factor is whether plaintiff initially chose to appeal its claims before the

board or the Court. It is undisputed that plaintiff first filed its breach of contract claims

before the ASBCA well before it brought its current action for termination for

convenience costs before the Court of Federal Claims. As stated in *Rockwell Automation,

Inc. v. United States*, "[f]or this court to have authority to transfer and consolidate an

action pending before an agency board, suits arising from one contract must be pending in this court and concurrently pending before an agency board." 70 Fed. Cl. 114, 126 (Fed. Cl. 2006). For Contract 0033, plaintiff has an ongoing case for breach of contract which has yet to be ruled upon by the ASBCA, as well as the instant case before the Court of Federal Claims. Thus, consolidation of the cases at the ASBCA would be appropriate – there can be no doubt that plaintiff has pending suits in both forums, and both suits arise from Contract 0033.

The fourth factor is whether one forum or the other has made significant progress on the claims. It is clear from the record provided by both parties that the ASBCA has done a significant amount of work aimed towards resolving Avant's breach of contract claim. Regarding Contract 0033, the ASBCA has completed merits hearings on the breach of contract claim, and post hearing briefs have been submitted (in this instance, the parties submitted these briefs after plaintiff filed the instant litigation before the Court). Def.'s Mot. at 12-13.

Where the parties disagree is as to how much these prior proceedings would help the ASBCA in the event that the instant termination for convenience claims are transferred to the board. Defendant's position is that the instant termination for convenience claim is very similar to the breach of contract claim brought before the ASBCA, because Avant, in essence, seeks the same remedy: compensation for items produced but not accepted by the Army because Avant contends the Army judged the items acceptability in an arbitrary and capricious manner. *Id.* at 27. Plaintiff believes that the two issues are entirely separate, and appears to be operating under the notion that

under a theory of termination for convenience costs, the only showing that plaintiff has to make is that it did, in fact, produce an excessive amount of items and incurred financial costs in doing so (as opposed to a breach of contract action, in which plaintiff would have to prove that the rejection of these items was done contrary to the stated testing standards for the items). Pl.'s Resp. at 18-19, 21.[2]

Plaintiff relies on *Best Foam Fabricators v. United States*, 38 Fed. Cl. 627 (Fed. Cl. 1997) to advance this argument. In *Best Foam*, a plaintiff contractor sued the government for breach of contract, claiming that the defendant had failed to perform under the contract and had also repudiated a valid contract without good cause. *Id.* at 635-36. The Court found that while there was a valid contract, the presence of a termination for convenience clause made this an appropriate case for constructively invoking that clause in order to limit the government's damages in order to avoid placing the government in breach. *Id.* at 638. On the issue of quantum, the defendant argued that the plaintiff's recovery should be limited because some of the items it produced, and now sought costs for, did not conform to the contract requirements. *Id.* at 639-40. The Court determined that the longstanding rule before the ASBCA was that "where a contract is

_____

[2] *See also* Oral Argument Transcript ("Tr."), with plaintiff's counsel stating "[O]ur calculation of damages for this action is based on the termination for convenience clause which gives the contractor recovery for the percentage of work performed. So in that calculation, and there's case law to support this, that you can claim for allegedly rejectable items as well as things that under the contract – strict terms of the contract was fully performed and was not terminated would be unallowable costs. So once there is a termination in effect, the calculation of damages changes completely and justifies a different measure of recovery." Tr. at 48:15-25, 49:1.

terminated for convenience of the Government, the contractor is entitled to recover its reasonable, allocable, and allowable costs incurred with respect to termination inventory even if such inventory did not comply in all respects with specification requirements." *Id.* at 640 (citing *New York Shipbuilding Co.*, 1972 ASBCA LEXIS 111, 73-1 B.C.A. (CCH) P9852 at 46,018-19, ASBCA No. 15443.) Although the *Best Foam* court noted that this rule had yet to be explicitly endorsed by the Federal Circuit or by the Court of Federal Claims, the Court found the ASBCA's rationale persuasive and thus there was no reason to depart from the rule when considering the plaintiff's claim. *Id.* Accordingly, the Court held that "Best Foam is entitled to recover the costs of producing the foam fuel cells, even if some were shown not to be in strict compliance with all of the contract specifications, unless the government established that any defects resulted from Best Foam's gross disregard of its contractual obligations or that any defects are so extensive as to render Best Foam's costs unreasonable." *Id.* at 641.

Plaintiff's argument that this rule should be applied to the instant case to allow for recovery of all items produced under the contract, regardless of whether they were rejected by the Army as defective or otherwise not in compliance with the terms of the contract, stretches *Best Foam* to its breaking point. As the language in *Best Foam* makes clear, the right of a contractor for compensation for defective items under a termination for convenience action is not iron-clad. For example, any gross disregard of contractual obligations would limit recovery, as would a showing that defects are so extensive as to render plaintiff's costs unreasonable. *Best Foam*, 38 Fed. Cl. at 641. Additionally, the court in *Best Foam* went on to analyze defendant's argument that plaintiff's produced

foam fuel cells did not meet contract specifications and found this argument to be unavailing. To the contrary, the Court found that all allegedly deficient actions taken by plaintiff were actually reasonable under the specifications written into the contract, *id.* at 642-43, and that "most of defendant's allegations of nonconformity are unfounded and none provides any basis for disallowing Best Foam's costs." *Id.* at 644.

The instant case provides a widely differing situation compared to *Best Foam*. Notably, the contract in this case expressly considers and expects that at least some percentage of the test items called for by the contract will be rejected by the Army. Specifically, Contract 0033 noted that the delivery schedule was based on a historical rejection rate of 45%, but that the actual rate of rejection may be higher or lower in individual cases. Thus, plaintiff was on notice from the commencement of the contract that it would be a near certainty that it would have to produce items in excess of what was required to be delivered under the contract, in order to accommodate for the likely rejection of some items. Simply put, the Court cannot at this juncture accept plaintiff's assertion that it is entitled to the cost of all items produced, even when the contract expressly contemplated that some items would be rejected as part of the normal course of the contract, and that *Best Foam* stands for the proposition that these costs should not be questioned. To the contrary*, Best Foam* requires that the costs for defective material not be unreasonable.

Notably, in *Best Foam*, the court conducted a trial on plaintiff's breach of contract claim (converted into a termination for convenience action) and was able to hear testimony and receive evidence which allowed the court to reach its conclusion that the

foam cells produced by plaintiff, which defendant argued were defective under the contract, actually met the contract specifications such that plaintiff was entitled to costs associated with their production. Thus, the Court was able to conclude that those costs were reasonable. This is not to say that recovery for all rejected test items is necessarily unreasonable – it is far too early for the Court to make such a broad proclamation. Rather, *Best Foam* shows a situation whereby plaintiff sought costs for allegedly defective items, defendant argued that the items were, in fact, defective, and plaintiff was able to successfully refute that argument and prove to the court that the items were not defective under the terms of the contract. What *Best Foam* does not stand for is a proposition that plaintiff may recover costs for allegedly defective items without further inquiry merely because the cause of action proceeds as a termination for convenience as opposed to a breach of contract.

Plaintiff, at some level, seems to understand this, as the complaint is replete with references to how it believes DLI arbitrarily and unreasonably rejected test items. *See* Compl. 16-1556 at ¶ 55 (plaintiff's only count asking the court to "determine a fair and equitable price adjustment to the Contract to compensate Avant for the items it provided to DLI in an attempt to meet DLI's arbitrary and ambiguous acceptance criteria and as a result of DLI's breach of its contractual duty to 'work closely with the contractor to improve items.'"). At the end of the day, whether or not plaintiff's test items were unreasonable rejected will be a question of fact that will need to be resolved in order to set the quantum for a potential recovery. This makes transfer of the instant matter appropriate. It is uncontested that plaintiff has already presented evidence and testimony

before the ASBCA that DLI acted arbitrarily and capriciously when it rejected certain test items. Such evidence would be useful and necessary in resolving the quantum in the instant case. The Court is completely uninformed on this particular aspect of the case. The ASBCA, on the other hand, and Judge McIlmail, the ASBCA judge presiding over Avant's board level appeals, in particular, has seen this evidence and heard this testimony. Thus, the Court believes that the significant progress made by the board in adjudicating plaintiff's breach of contract proceedings would aid the board in resolving this claim for termination for convenience damages. Accordingly, the fourth factor weighs in favor of transfer.

The fifth factor to be considered is whether concurrent resolution would result in an inefficient allocation of the court's, board's, or party's resources. Defendant argues that it would be inefficient for the Court to consider the instant litigation given the extensive breach of contract proceedings that have been conducted at the ASBCA, leading to the ASBCA's familiarity with the parties and the facts of the case. Def.'s Mot. at 27. Plaintiff, on the other hand, argues that no efficiency would be gained from consolidation, and that consolidation may result in significant delay in the resolution of plaintiff's outstanding breach of contract claim for Contract 0033 before the board. Pl.'s Resp. at 31. The Court finds that this factor weighs in favor of transfer to the ASBCA.

Plaintiff's argument that such a transfer would unduly lengthen its pending breach of contract proceedings is unpersuasive. The record is clear that with regard to the breach of contract claim pending before the ASBCA, the parties and the board have already completed the lion's share of the work to be done. Merits hearings have been held and

post-trial briefing has been filed. To the Court's knowledge, all that remains is for the board to issue a final decision on the matter. Furthermore, plaintiff admits in its brief that "the ASBCA's final decision will be purely advisory because Avant's recovery must be determined under the termination for convenience clause and not under a breach of contract theory of damages." *Id.* at 31, n. 6. Given plaintiff's view that any outcome reached in its breach of contract case before the ASBCA would be essentially meaningless, it is hard to believe that plaintiff would be severely inconvenienced if that decision were to be delayed by consolidation of that case with its instant termination for convenience costs case. Nevertheless, given the holding that plaintiff is not necessarily entitled to recover for each and every item it produced in relation to the contracts, plaintiff would need to make a similar showing to recover before the Court. Because the ASBCA has already allegedly heard testimony concerning the reasonableness of the Army's action in rejecting certain testing materials, the Court believes that the board is in a better position to hear new evidence relating to termination for convenience costs. The Court, on the other hand, has yet to hear any such testimony, and the process of getting the Court up to speed would likely be a more costly and inefficient process than doing so before the board. Should plaintiff be required to present new evidence to support its termination for convenience costs for the first time at the board, it would be no less efficient to present that evidence in that forum than it would be before the Court.

The final factor to be considered is whether separate forums would reach inconsistent results. Given that termination for convenience costs are not presently before the ASBCA, it is an impossibility for the Court to reach a result contrary to anything the

board could decide. Given the entwinement between the two claims and the overall similarity that recovery would yield, it is possible that the ASBCA's outstanding decision regarding the breach of Contract 0033 might create some confusion with the parties and impact how they view the instant case before the Court. In the event that the ASBCA issues a decision regarding this breach of contract, the board would be the best forum to reconcile any issues or concerns the parties may have regarding that decision impacting any claim under a termination for convenience theory.

After careful consideration of the *Morse Diesel* factors, the Court concludes that transfer of plaintiff's claim for termination for convenience damages to the ASBCA would be in the interest of justice. The claims concern a contract with which the ASBCA is already intimately familiar with, and the theories of recovery, while inherently different from a legal standpoint, project to yield a similar result when it comes to damages recoverable. Therefore, transfer of the instant matter to the ASBCA would be in the interest of justice.

### III.   CONCLUSION

For the above stated reasons, the following is hereby ordered:

1.  Defendant's motion to dismiss is **DENIED** because the Election Doctrine does not serve to limit the Court's jurisdiction in the instant case.

2.  Defendant's motion to dismiss is **DENIED** because plaintiff has plead a claim for relief upon which relief may be granted.

3.  In the interest of justice, this matter shall be transferred to the ASBCA for further proceedings. Defendant's motion to transfer is **GRANTED**.

The Clerk shall enter judgment accordingly.


**IT IS SO ORDERED.**


                                             s/ Bohdan A. Futey
                                             BOHDAN A. FUTEY
                                             Senior Judge